UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Case No. 24-CR-0026 (APM) |
| TERRY TURNER, | : | |
| | : | |
| *Defendant.* | : | |

**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

Defendant Terry Turner ("Turner"), by and through undersigned counsel, and pursuant to the Fifth and Sixth Amendments of the United States Constitution, and any applicable case law, hereby moves this Court to suppress any and all statements, admissions and confessions made to law enforcement officers upon and after his arrest. In support of this motion, Mr. Turner states as follows:

**FACTS**

Mr. Turner is charged via indictment with possession with intent to distribute hydrocodone, alprazolam and promethazine with codeine (Counts 1 – 3); using, carrying and possessing a firearm in furtherance of a drug trafficking offense (Count 4); possession with intent to use five or more false identification documents to facilitate a drug trafficking offense (Count 5); aggravated identity theft (Count 6); wire fraud (Count 7) and interstate transportation of a stolen motor vehicle (Count 8). The government has produced extensive discovery, including alleged statements by Ms. Turner to law enforcement officers while in custody. At this time it is unclear whether the government intends to introduce any of these statements at trial. Mr. Turner; however, requests that this Honorable Court hold an evidentiary hearing and suppress any and all statements made to law enforcement officers.

On March 3, 2023, at approximately 6:00 p.m., Metropolitan Police Department officers responded to the intersection of 15th Street NE and Benning Road NE, Washington D.C. for a report of a vehicle collision with injury.  Once on the scene, officers encountered Mr. Turner, who was reported to be one of the drivers involved in the collision.  The officers observed Mr. Turner standing by a blue 2017 Jaguar XE Virginia registration TUM8694.  Mr. Turner is the registered owner of the vehicle.  The encounter was recorded by the officer's body worn camera.

Officer De'Plour, one of the reponding officers, found an empty medicine bottle under the Jaguar.  Officer De'Plour then stood by the open door of the Jaguar while Mr. Turner collected his belongings from inside the car, penning Mr. Turner inside.  Officer De'Plour then saw an empty pill bottle with the name scratched off in the console of the car and questioned Mr. Turner about the bottle.  Officer De'Plour then told Mr. Turner to step out of the vehicle and walked him to the rear of the car.  Once at the rear of the car, Officer De'Plour told Mr. Turner that he was going to perform a "protective pat down."

During Officer De'Plour's pat down, he recovered an additional prescription bottle labeled Promethazine-Codeine, an orange prescription pill bottle with no label containing unknown white and blue pills, a dark colored prescription bottle labeled Promethazine Hydrochloride and Codeine, and an orange-colored prescription bottle labeled Hydrocodone chlorpheniramine from Mr. Turner's person. After those items were found, Officer De'Plour handcuffed Mr. Turner and placed him under arrest.  Officer De'Plour then asked Mr. Turner "who's is that?," referring to a magazine found in the glovebox of Mr. Turner's vehicle.  Mr. Turner responded that he had been to the range "a minute ago" and told Officer De'Plour that he

did not own a firearm. Officer De'Plour continued asking about a weapon and Mr. Turner denied having one. Mr. Turner made other statements in response to custodial interrogation.

## ARGUMENT

### I. MR. TURNER'S STATEMENTS WERE OBTAINED IN VIOLATION OF MIRANDA AND WERE NOT KNOWINGLY AND VOLUNTARILY MADE

It is well-settled that statements made during custodial interrogation are generally inadmissible unless a defendant first has been advised of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966). *See also Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986). In *Miranda,* the Supreme Court held that the prosecution may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that right. *See Miranda v. Arizona,* 384 U.S. at 444.

To protect a suspect's Fifth Amendment right against self-incrimination, *Miranda* warnings must be given to an individual before he is subjected to custodial interrogation. *Miranda,* 384 U.S. at 443-44. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. And interrogation includes not only "express questioning," but also "any words or actions . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291 (1980). Absent any exception to the *Miranda* requirement, the police's failure to administer the warnings before a defendant is subjected to custodial interrogation requires the exclusion of his statements from evidence. *See Miranda,* 384 U.S. at

3

444; *Berkemer v. McCarty,* 468 U.S. 420, 429 (1984). *See also United States v. Redrick*, 48 F. Supp. 3d 91, 100 (D.D.C. 2014)

In the instant case, the government cannot seriously contest that Mr. Turner was in custody or that he was subject to custodial interrogation by Ofc. De'Plour, who did not advise him of his rights under *Miranda* prior to questioning him. Even if Ofc. De'Plour had in fact advised him of his rights, the question arises whether Mr. Turner waived his constitutional rights by responding to custodial interrogation.

To establish a valid waiver, the government must prove by a preponderance of the evidence "(1) that the relinquishment of Mr. Turner's rights was voluntary, and (2) that he had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal,* 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine,* 475 U.S. 412, 421 (1986)).

The Court must "consider the totality of circumstances surrounding [defendant's] statement and determine if that statement was the result of a knowing, voluntary, and intelligent waiver of the protections implicit in the *Miranda* warnings." *United States v. Tyler,* 164 F.3d 150, 158 (3rd Cir. 1998). Such circumstances vary according to the facts of the particular case, including the background, experience, and conduct of the suspect, *see Oregon v. Bradshaw,* 462 U.S. 1039, 1046 (1983), as well as any indicia of coercion.

a. <u>the waiver was not knowing</u>

Officer De'Plour arrested Mr. Turner, interrogated him and elicited what could be considered incriminating statements from him. During the interrogation he was handcuffed and clearly in custody. He was not advised of his rights and he did not know that he could refuse to

4

answer questions. Because Ofc. De'Plour never advised him of his rights, Mr. Turner did not have a full awareness of his rights nor of the consequences of waiving those rights.

      **b.**      <u>**the waiver was not voluntary**</u>

The Court must determine the voluntariness of statements by looking at the totality of the circumstances to decide whether it was coerced or the product of a rational intellect and a free will. *See Withrow v. Williams,* 507 U.S. 680, 693 (1993). Voluntariness is "determined after a careful evaluation of the totality of the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials. . . . Voluntariness cannot be taken literally to mean a knowing choice. . . . Rather, a voluntary statement is the product of an essentially free and unconstrained choice by its maker . . . . where his will has [not] been overborne and his capacity for self-determination [not] critically impaired." *United States v. Garcia*, 780 F. Supp. 166, 171 (S.D.N.Y. 1991) (quotations omitted). *See also Colombe v. Connecticut*, 367 U.S. 568, 602 (1961).

An armed police officer arrested and handcuffed Mr. Turner. During the entire time, he was not advised of his rights, was not free to leave, was surrounded by armed police and felt that he had no other choice but to answer the questions put to him. Such a setting for his interrogation was one providing "inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak." *United States v. Morales*, 834 F.2d 35, 38 (2nd Cir. 1987). Thus, his responses were not the result of a "free and unconstrained" choice.

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, and any others which may appear to the Court following an evidentiary hearing, Mr. Turner respectfully requests that any custodial statements made by him be suppressed and that this Motion be **GRANTED**.

Dated: Washington, DC
June 30, 2025

Respectfully submitted,

**BALAREZO LAW**

By: /s/ A. Eduardo Balarezo
_____
A. Eduardo Balarezo
DC Bar # 462-659
400 Seventh Street, NW
Suite 306
Washington, DC  20004
(202) 639-0999 (tel)

*Counsel for Defendant Terry Turner*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of June 2025, I caused a true and correct copy of the foregoing Defendant's Motion to Suppress Statements to be delivered to the parties in this case via ECF.

/s/    A. Eduardo Balarezo
_____
A. Eduardo Balarezo